UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                               :

UNITED STATES OF AMERICA,                 :

          -v-                         :

                                     :          98 Cr. 185 (JPC)

                                   :

ALBERTO RAPOSO,                     :         OPINION AND ORDER

                    Defendant.       :

                                   :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Defendant Alberto Raposo, a federal inmate serving a forty-three-year sentence for setting fire to a Manhattan building that took the life of a New York City firefighter, moves for the second time for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 104 ("Motion"). On January 10, 2023, the Court denied Raposo's prior motion for compassionate release upon concluding that Raposo failed to establish extraordinary and compelling reasons for a sentence reduction and further that no reduction of his sentence was warranted after consideration of the applicable factors under 18 U.S.C. § 3553(a). *United States v. Raposo*, No. 98 Cr. 185 (JPC), 2023 WL 142786, at *5-8 (S.D.N.Y. Jan. 10, 2023). Now proceeding *pro se*, Raposo argues in his current Motion that extraordinary and compelling reasons exist for his early release because of, *inter alia*, the length of his sentence, his age and depression at the time of the offense, and his rehabilitation while incarcerated. In opposing the Motion, the Government argues that Raposo continues to not establish extraordinary and compelling reasons and that the relevant factors under Section 3553(a) still counsel against a sentence reduction. Dkt. 111 ("Opposition"). For the reasons that follow, the Court denies the Motion.

# I. Background

## A. Offense Conduct[1]

In 1994, Raposo, Hector Ruiz, and Abraham Delvalle were living together in a building at 79-81 Worth Street in Manhattan.  PSR ¶ 6.  On June 5 of that year, after a dispute between Ruiz and Raposo, Ruiz left the building with Delvalle.  *Id.* ¶¶ 9, 11.  Upon realizing that Ruiz and Delvalle had returned, Raposo began to set the building on fire.  *Id.* ¶ 12.  With Ruiz and Delvalle on the fifth floor, Raposo ignited the first fire in the building's subcellar, proceeded to the fourth floor where he gathered his belongings and set more fires, and then set additional fires on the second floor, in the lobby, and to a pile of garbage in front of the building's front door.  *Id.* ¶¶ 12-13.  Raposo also strategically poured oil on stairs, a third floor entrance to a fire escape, and the fire escapes themselves.  *Id.* ¶ 11.  He further locked the front door with a mortise lock to which he held the only key, and removed wires to disable the building's fire alarm.  *Id.* ¶¶ 11, 13.

Ladder Company #8 of the New York City Fire Department ("FDNY") was the first unit to respond to the fire.  *Id.* ¶ 14.  After forcing open the locked front door, firefighters encountered Ruiz and Delvalle, stumbling through smoke trying to find their way out of the building, and guided the two men to safety.  *Id.*  Moments later, firefighters with FDNY Ladder Company #6, led by Lieutenant George Lener, fought the blaze in the subcellar of the building, navigating their way through water that had accumulated from the sprinkler system.  *Id.*  Lieutenant Lener remained alone in the subcellar after the tanks of the firefighters under his command ran dry.  *Id.* ¶ 15.  Other firefighters subsequently heard a distress call, and one eventually found Lieutenant Lener facedown and unconscious in a foot of water in the subcellar.  *Id.*  Lieutenant Lener was carried

---

[1] The following description of Raposo's offense conduct is based on information in the Presentence Investigation Report, Dkt. 86-5 ("PSR"), which the Honorable Deborah A. Batts adopted at sentencing, Dkt. 91-1 ("Sentencing Tr.") at 19:13-14.

out by five firefighters and rushed to a hospital in an ambulance. *Id.* ¶ 16. Tragically, Lieutenant Lener never regained consciousness, and, approximately forty-five days later, died from carbon monoxide poisoning that he endured in the subcellar. *Id.*

About ten days after the fire, Raposo was found by fire marshals at his mother's house and agreed to come to their office for questioning. *Id.* ¶ 17. After being advised of and waiving his constitutional rights, Raposo admitted to setting fires throughout 79-81 Worth Street and signed a confession. *Id.* The following day, Raposo gave a videotaped confession before an assistant district attorney. *Id.* Recovered from Raposo's mother's house were the only key to the mortise lock and a purple cigarette lighter, which Raposo admitted to using to start the fire. *Id.* ¶ 13.

**B.    Procedural History**

Raposo originally was charged in New York Supreme Court, New York County, with arson in the first degree, arson in the third degree, and murder in the second degree. *Id.* ¶¶ 3, 43. On July 1, 1996, a jury found Raposo not guilty of those state charges. *Id.* ¶ 43.

A federal investigation followed the state court acquittal, leading to Raposo's arrest on federal arson charges on March 5, 1998. *Id.* ¶ 4. The Indictment, which was filed on March 4, 1998, charged Raposo with one count of committing arson of property used in interstate commerce,[2] with death resulting, in violation of 18 U.S.C. § 844(i). Dkt. 1; PSR ¶ 1. On February 9, 1999, Raposo was found guilty of that offense after a jury trial. PSR ¶¶ 2, 18.

Raposo's sentencing took place before Judge Batts on June 8, 1999. In calculating Raposo's offense level under the U.S. Sentencing Guidelines, Judge Batts declined to impose an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1, finding no clear or convincing

---

[2] 79-81 Worth Street was a commercial building, with an occupant, Bargain City, that had some of its merchandise shipped from out of state, and with its ground floor and basement leased to another company, The Road Show, that regularly imported clothing from out of state. PSR ¶ 5.

3

evidence that Raposo committed perjury.  Sentencing Tr. at 7:23-25.  Judge Batts also declined to depart downwardly based on the size of the fires, the successive federal prosecution following the state acquittal, and Raposo's rehabilitation.  *Id.* at 8:8-12.  Judge Batts additionally noted that, while she did not view the evidence as conclusively establishing that Raposo's motive in setting the fires was to kill Ruiz and Delvalle, a downward departure on that basis was not warranted in light of "the degree of risk inherent in the conduct and the nature of the underlying offense conduct."  *Id.* at 8:13-25.  As Judge Batts explained:

> Arson always includes the inherent risk that life will be lost.  When the life lost is that of a firefighter in the line of duty -- and several fires were set, including near the obvious way of egress from the burning building -- the Court declines to exercise that discretion to depart downwardly for that reason.

*Id.* at 9:1-6.  Judge Batts did, however, downwardly depart from offense level 43 to level 42 because the Government did not seek a recommendation of life imprisonment from the jury.  *Id.* at 9:7-14 (citing *United States v. Tocco*, 135 F.3d 116, 132 (2d Cir. 1998)).[3]  Offense level 42 resulted in a Guidelines range that started at 360 months' imprisonment.  *Id.* at 9:15-17 ("Accordingly, the guideline sentencing range in this case is 360 months to just below the life expectancy of the defendant.").

---

[3] Without this downward departure, Raposo's offense level would have been 43.  Pursuant to Section 2K1.4(c)(1), "[i]f death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above."  U.S.S.G. § 2K1.4(c)(1) (U.S. Sent'g Comm'n 1998).  Given Raposo's conduct and the resulting death of Lieutenant Lener, the most applicable Guidelines provision was Section 2A1.1 (First Degree Murder), which had a base offense level of 43.  *Id.* § 2A1.1; *see* PSR ¶ 27.  Offense level 43 would have resulted in a Guidelines range of life imprisonment.  U.S.S.G. Ch. 5, Pt. A (U.S. Sent'g Comm'n 1998); *see* PSR ¶ 70.  Citing *Tocco*, however, Judge Batts reasoned that "[t]he government did not seek [a life sentence] recommendation from the jury in this case, and therefore the Court cannot sentence the defendant to a life sentence."  Sentencing Tr. at 9:10-14.

Lieutenant Lener's wife addressed Judge Batts at sentencing. *Id.* at 10:22-17:7.  She spoke powerfully about the devastating impact of her husband's death on their family and friends, the rough childhood he overcame, his generosity, his love of his job as a firefighter, and their future retirement plans. *Id.* at 11:8-13:16, 15:2-17:6.  She also recounted the horrible forty-five days her husband spent in the hospital, with "machines and tubes hooked to every part of his body," never to regain consciousness. *Id.* at 13:17-15:1.

In imposing sentence, Judge Batts stressed the "extremely serious and dangerous" nature of arson, emphasizing that arsonists must be held responsible for the consequences of fires they ignite:

> Once a fire is started and the forces of nature are invoked, no person can know what the final toll of destruction or death will be.  The point at which individuals can control fire is in deciding not to set them.  Once they set a fire, they must be held responsible for all the consequences of their actions.

*Id.* at 18:7-13.  For that reason, Judge Batts explained that Raposo must "be held accountable for the loss of the life of Lieutenant Lener." *Id*. at 18:16-17.  At the same time, Judge Batts acknowledged that Raposo was "a troubled individual who ha[d] not learned socially acceptable means of coping with stresses, failure, and difficulties in life," and that "[h]is mental capacity and emotional development may [have] contribute[d] to that maladjustment." *Id.* at 18:18-22.

In arriving at the sentence, Judge Batts determined that it was not "necessary or appropriate to deprive [Raposo] of all benefit he may earn from proper social adjustment to his life in prison," and therefore declined to impose a sentence that would "negate[] any good time he may be able to earn and be credited with while serving his sentence." *Id.* at 19:1-6.  Judge Batts therefore consulted a National Vital Statistics Report to determine Raposo's projected life expectancy, *id.*

at 19:7-12, and imposed a sentence of 524 months in prison to be followed by five years of supervised release, *id.* at 19:20-25.[4]

The case was reassigned to the undersigned on June 18, 2021. Dkt. 81. On August 11, 2022, Raposo filed his first motion for compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 86 ("First Motion"). Raposo argued multiple grounds for early release: (1) the ongoing effects of the COVID-19 pandemic, combined with his age, *id.* at 19-21; (2) the failure of the Bureau of Prisons ("BOP") to properly treat his acute appendicitis, *id*. at 21; and (3) his lack of a prison disciplinary record and his rehabilitation, *id*. at 21-23. After holding oral argument, *see* Dkt. 101, the Court denied Raposo's First Motion on January 10, 2023, finding that Raposo failed to establish extraordinary and compelling reasons to warrant his early release, *Raposo*, 2023 WL 142786, at *5-7, and further that the factors under 18 U.S.C. § 3553(a) led to the conclusion that a sentence reduction was not warranted, *id.* at *7-8.

---

[4] Raposo's conviction has been repeatedly affirmed on appeal and collateral review. The Second Circuit affirmed Raposo's conviction on February 17, 2000, *United States v. Raposo*, 205 F.3d 1326 (2d Cir. 2000) (unpublished), and the Supreme Court denied his petition for a writ of *certiorari* on May 30, 2000, *Raposo v. United States*, 530 U.S. 1210 (2000). Judge Batts denied Raposo's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on May 7, 2004, *Raposo v. United States*, Nos. 01 Civ. 5870 (DAB), 98 Cr. 185 (DAB), 2004 WL 1043075 (S.D.N.Y. May 7, 2004), and denied reconsideration of that denial on February 8, 2005, *Raposo v. United States*, Nos. 01 Civ. 5870 (DAB), 98 Cr. 185 (DAB), 2005 WL 292750 (S.D.N.Y. Feb. 8, 2005). The Second Circuit then denied a certificate of appealability. *Raposo v. United States*, No. 05-1362 (2d Cir. Aug. 5, 2005); *see also* Dkt. 67 (Second Circuit mandate). On September 19, 2016, the Second Circuit denied Raposo's motion for leave to file a successive Section 2255 petition based on *United States v. Johnson*, 576 U.S. 591 (2015). *Raposo v. United States*, No. 16-1426, Dkt. 38 (2d Cir. Sept. 19, 2016); *see also* Dkt. 69 (Second Circuit mandate). Then, on March 1, 2017 and April 5, 2017, respectively, Judge Batts denied two motions in which Raposo sought a sentence reduction or a resentencing to time served. Dkts. 71, 73. On July 30, 2019, Judge Batts denied Raposo's request for appointment of counsel to appeal his conviction and sentence. Dkt. 78. And on August 28, 2019, the Second Circuit again denied Raposo's request for leave to file a successive Section 2255 petition based on *United States v. Davis*, 139 S. Ct. 2319 (2019). *Raposo v. United States*, No. 19-2328, Dkt. 23 (2d Cir. Aug. 28, 2019); *see also* Dkt. 80 (Second Circuit mandate).

On March 7, 2023, less than two months after the Court's Order denying the First Motion, Raposo submitted the instant Motion, followed by additional filings, again seeking to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 104, 108, 112, 114.[5] Raposo is currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut and has a projected release date of June 13, 2033. *See* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Jan. 13, 2024).

## II.  Legal Standard

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a defendant who has exhausted his or her administrative remedies may subsequently move a federal district court for compassionate release or reduction of his or her sentence.  That statute provides, in pertinent part, that the court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . (i) extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

Because Raposo is now proceeding *pro se*,[6] the Court construes his motion liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted).  But, as the moving party, Raposo still bears the burden of demonstrating his entitlement to early release.  *United States*

---

[5] Raposo also suggests that the Court should reduce his sentence under its authority "pursuant to [R]ule 35, or where the [S]entencing [C]ommission has subsequently lowered the applicable sentencing range."  Motion at 2.  Federal Rule of Criminal Procedure 35 allows a court to correct a sentence, within fourteen days of sentencing, when there is "arithmetical, technical, or other clear error," Fed. R. Crim. P. 35(a), or reduce a sentence, upon a motion by the Government, for a defendant's substantial assistance to law enforcement in certain circumstances, Fed. R. Crim. P. 35(b).  Neither of those scenarios applies here.  Further, Raposo points to no change to the U.S. Sentencing Guidelines that has lowered his sentencing range, nor is the Court aware of any.

[6] Raposo was represented by counsel in connection with the First Motion.

*v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *accord United States v. Phillibert*, 557 F. Supp. 3d 456, 458-59 (S.D.N.Y. 2021).  In other words, Raposo must show that: (1) he has exhausted his administrative remedies;[7] (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the applicable sentencing factors, on balance, do not cut against such reduction.

### III. Discussion

### A.    Extraordinary and Compelling Reasons

Congress did not define extraordinary and compelling reasons for a sentence reduction. Rather, it instructed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  Before November 1, 2023, that guidance— which was set forth at Section 1B1.13 and its commentary and by its terms was directed only at motions brought by the BOP—outlined three categories of extraordinary and compelling reasons (the defendant's medical condition, the defendant's age, and family circumstances), as well as, as determined by the Director of BOP, an extraordinary and compelling reason other than, or in combination with, the identified three reasons.  *See, e.g.*, U.S.S.G. § 1B1.13, cmt. n.1 (U.S. Sent'g Comm'n 2021); *see generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,255-56 (effective Nov. 1, 2023).  In deciding defendant-initiated motions, district courts in the Second Circuit were permitted to consider the Commission's guidance, but— given that Section 1B1.13 at the time, as written, applied only to BOP-initiated motions—courts

---

[7] Raposo asserts that he has exhausted his administrative remedies with the BOP, Motion at 6, 18-20, and the Government does not contend otherwise, *see generally* Opposition.

were not required to do so.  *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("[I]f a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it.").  Instead, courts were free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *Id.* at 237.

Effective November 1, 2023, the Sentencing Commission amended Section 1B1.13 to update its policy statement to encompass motions brought by defendants.  U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."); *see generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,254 (effective Nov. 1, 2023).  The amendment also expands the categories of circumstances considered "extraordinary and compelling," instructing courts to consider not only the defendant's medical circumstances, age, and family circumstances, but also whether the defendant is or has been a victim of abuse or received an unusually long sentence under certain circumstances with a change in the law. U.S.S.G. § 1B1.13(b)(1)-(4), (6).  Section 1B1.13 also now allows courts to consider any other circumstance or combination of circumstances that, either themselves or together with the reasons identified in subsection (b)(1) through (b)(4) (*i.e.*, medical circumstances, age, family circumstances, and victim of abuse), rise to the level of gravity of those four reasons.  *Id.* § 1B1.13(b)(5).  It also adds specific guidance on the permissible consideration of non-retroactive changes in the law, *id.* § 1B1.13(c), and provides that the defendant's rehabilitation may be

considered as a factor in the "extraordinary and compelling" inquiry, although it cannot serve as the sole basis for reducing a sentence, *id.* § 1B1.13(d).[8]

Construed liberally, Raposo's Motion argues that a sentence reduction is warranted because the following circumstances, in his view, amount to extraordinary and compelling reasons: (1) changes in the law, Motion at 8-9, 11-12, (2) the severity of his sentence, including the disparity of his term of imprisonment when compared to sentences received by other defendants, *id.* at 6-9, (3) his age and depression at the time of the offense, *id.* at 9-10, (4) statements by the prosecutor and the Court regarding the length of his sentence, *id.* at 10-11, (5) his rehabilitation, *id.* at 12-13, and (6) what he calls the "Holloway doctrine," *id.* at 2. These grounds fail to constitute extraordinary and compelling reasons that warrant a sentence reduction.

### 1. Changes in the Law

Raposo's efforts to identify changes in the law since Judge Batts imposed his sentence are unavailing for the simple reason that no change in the law in his favor has occurred. Raposo contends that, in a 2016 filing, the Government took the position that his Guidelines range was "incorrectly calculated" in light of *Johnson v. United States*, 576 U.S. 591 (2016). Motion at 11-12. That is not a fair characterization of what the Government wrote in that filing. In an Affirmation filed with the Second Circuit opposing Raposo's motion for leave to file a successive habeas petition, the Government argued that *Johnson* did not apply in his case. *Raposo v. United*

---

[8] This Court need not determine whether *Brooker*—which allowed district judges to "consider the full state of extraordinary and compelling reasons that an imprisoned person might bring before them," 976 F.3d at 237—or the current version of Section 1B1.13 governs the analysis of Raposo's Motion. Under the terms most favorable to Raposo under either standard, the outcome would be the same: he has not offered extraordinary and compelling reasons warranting a sentencing reduction, for reasons that follow. *Cf. United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3-4 (S.D.N.Y. Nov. 21, 2023) (considering the Commission's amended guidance in assessing a compassionate release motion brought by a defendant in June 2023).

*States*, No. 16-1426 (2d Cir.), Dkt. 22-1 ¶¶ 17-18.  The Second Circuit agreed in denying Raposo

leave.  *Id.*, Dkt. 38 at 1.  The Government further argued in that Affirmation, in the alternative,

that "even if Raposo's case were somehow implicated by the issues in *Johnson* – and it is not," a

rule affecting the range of sentences prescribed by the Guidelines would be a procedural rule, not

a substantive rule; it would not apply retroactively and "would establish only that the defendant's

guidelines had been incorrectly calculated, but it would not alter the statutory boundaries for

sentencing set by Congress for that crime."  *Id.*, Dkt. 22-1 ¶ 19 (quoting *In re Marvin Griffin*, No.

16-12012, 2016 WL 3002293, at *4 (11th Cir. 2016)).

If anything, it appears that the only potentially relevant change in the law would have been

to Raposo's detriment.  As discussed, at sentencing Judge Batts departed downwardly from an

offense level of 43 to an offense level of 42, reasoning that the Government did not seek a

recommendation of life imprisonment from the jury and a sentence of life imprisonment could

only be imposed with a jury recommendation, presumably based on her assessment of the

prevailing law.  Sentencing Tr. at 9:7-14 (citing *Tocco*, 135 F.3d at 132).  The requirement cited

in *Tocco*, however, no longer exists.  *Compare* 18 U.S.C. § 34 (1988) *with* 18 U.S.C. § 34; *see*

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title VI

§ 60003(a)(1) (Sept. 13, 1994).

### 2.  The Severity of Raposo's Sentence

Raposo's argument that he presents extraordinary and compelling reasons because of the

length of his sentence also is not persuasive.  *See* Motion at 6-9.  By any measure, Raposo received

a very long sentence.  But there were very compelling reasons for that sentence.  Raposo set fire

to a building, knowing that two individuals were inside, and he took affirmative steps to make it

difficult for them to escape including by pouring oil on egresses; both individuals in fact needed

to be rescued by firefighters.  PSR ¶¶ 11, 14.  And Raposo's arson ultimately took the life of a firefighter who was battling the fire.  *Id.* ¶ 16.  Thus, even assuming that Raposo's sentence is considerably longer than the average federal sentence for murder, *see* Motion at 7-9; Opposition at 6, there were compelling reasons for that to be the case.  The Court is therefore not persuaded that Raposo would have received a shorter sentence today, even assuming *arguendo* that such consideration would be a valid basis for relief.  *Cf. United States v. Marrero*, No. 11 Cr. 568 (PKC), 2020 WL 7079483, at *3 (S.D.N.Y. Dec. 3, 2020) ("A likelihood or even certainty that the defendant would receive a lower sentence today is not, standing alone, an extraordinary and compelling reason for a sentence reduction.").

Nor do the cases that Raposo cites in endeavoring to show a sentencing disparity establish extraordinary and compelling reasons for his release.  *See* Motion at 6; Dkt. 112 at 2.  *United States v. Ferranti*, No. 95 Cr. 119 (JBW) (E.D.N.Y.), which also involved arson that resulted in the death of a firefighter, presents somewhat analogous conduct.  Jack Ferranti, the defendant who set the fire, was convicted after trial and sentenced to a term of imprisonment of 435 months, *see Tocco*, 135 F.3d at 221, which, assuming full good conduct time, would be about six-and-a-half years shorter than Raposo's sentence.  Initially, Judge Batts considered Ferranti's sentence when she sentenced Raposo.  Sentencing Tr. at 18:22-25.  Further, while there are certain differences that arguably fall in Raposo's favor—for instance, Ferranti committed the arson to cut losses from a failing business and to collect insurance proceeds, *Tocco*, 135 F.3d at 120-21—there is no indication in the Second Circuit's decision that Ferranti ignited the fire to target particular individuals or took measures to impede their escape or the firefighters' response.  Ferranti also was considerably older than Raposo at the time of sentencing, with a remaining life expectancy of only 372 months.  *See id.* at 131.  Thus, Ferranti's sentence amounted to "a period of time five

years longer than his life expectancy." *Id.* at 120.  In contrast, Judge Batts imposed a sentence of years that, based on life expectancy statistics, would be expected to allow Raposo to benefit while incarcerated from good conduct that would accelerate his release date.  Sentencing Tr. at 18:24-19:12.

Raposo also points to a case in this District where compassionate release motions were granted because the sentences were found to have been disproportionately severe.  Dkt. 112 at 2. In *United States v. Torres*, 464 F. Supp. 3d 651 (S.D.N.Y. 2020), the court granted compassionate release for two brothers, finding merit to their argument that their sentences—life imprisonment without parole—"appear[ed] to be starkly disproportionate to the sentences received by their twelve co-defendants, none of whom remain[ed] incarcerated." *Id.* at 658 (internal quotation marks omitted).  The court also agreed with the defendants that "their sentences . . . [were] disproportionately severe compared to the sentences received by leaders of major drug trafficking organizations." *Id.* (internal quotation marks omitted).  Raposo points to no such disparity in analogous circumstances that would justify his early release from prison given the exceedingly serious crime he committed.

### 3. Raposo's Age and Depression

Raposo additionally points to the fact that he was twenty-two years old when he committed the offense and contends that he was suffering from depression at the time.  Motion at 9-10; *see also* PSR at 1; *id.* ¶¶ 52, 56.  In support, Raposo cites a decision from this District reducing the sentence for a gang leader who committed a murder at the age of eighteen. *See United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021).  The court in *Ramsay* reasoned that "in high-pressure, time-sensitive, emotional contexts ('hot cognition'), adolescents tend to make riskier decisions" than adults, *id.* at 419-20, that the defendant's conduct of "wantonly fir[ing] [gunshots]

into a crowd" contained elements of "hot cognition," *id*. at 424, and that the defendant's "decision to fire [gunshots] into a crowd ha[d] all the hallmarks of adolescent crime: a split-second, hot-headed choice made in the presence of peers," *id*.

The Government acknowledges that Raposo's crime "had some of the characteristics of a situation marked by 'hot cognition,'" Opposition at 7:  Raposo committed the arson after a fight with Ruiz and while experiencing depression and drinking heavily.  But he also waited for Ruiz and Delvalle to return to the building and committed deliberate acts—pouring oil on stairs and fire escapes, disabling the fire alarm, and locking the front door with a mortise lock for which only he had the key[9]—that reflected strategic conduct to impede egress and emergency response.  *Id.* ¶¶ 11-13.  This was a far cry from a "split-second hot-headed choice" of an eighteen-year-old.  *Ramsay*, 538 F. Supp. 3d at 424.  And unlike in *Ramsay*, where the defendant was ordered by his "boss" "to go take care of" a gang rival, *id.* at 412, Raposo was not under the influence of outside pressure.  Rather, Raposo acted entirely on his own, after deliberation and a degree of planning.  *See United States v. Price*, No. 05 Cr. 492 (NGG), 2023 WL 4850995, at *2 (S.D.N.Y. July 28, 2023) (denying a compassionate release motion brought by a defendant who was a teenager for much of his conduct, finding that his crimes, as the leader of a drug trafficking and violent criminal organization, "cannot merely be explained by his youth" and "written off as youthful folly" but rather reflected "calculated decisions to engage in violent activity").

Raposo also contends that, at the time of the crime, he suffered from untreated depression, Motion at 10, an argument he did not previously make at sentencing.   Judge Batts did consider,

---

[9] Raposo argues that this lock could have been opened from the inside, suggesting that he did not trap Ruiz and Delvalle inside the building.  Motion at 14.  Even assuming this to be the case, it does little to reduce the seriousness of the act, as it would have made it more difficult for first responders to enter the burning building.

however, Raposo's history and characteristics under 18 U.S.C. § 3553(a), factoring in that Raposo was a "troubled individual" and his "emotional development may [have] contribute[d] to that maladjustment." Sentencing Tr. at 18:18-22. Even taking these considerations into account, as Judge Batts reasonably concluded, Raposo's offense—which resulted in the death of Lieutenant Lener, a husband and father of three young children—demanded significant and just punishment.

### 4. Statements by the Court and the Government

Raposo suggests that certain statements made by Judge Batts and the Government call into question the validity of his sentence. Motion at 10-11. The statements he points to, however, are either taken out of context or simply do not constitute extraordinary and compelling reasons for his early release.

Raposo contends that Judge Batts "was not fully convince[d] about the charge," *id.* at 10, because during jury *voir dire* she "specifically instructed the jury that no murder charge w[]ere to be considered[,] only arson," *id.* at 11. This instruction hardly suggested any apprehension on the part of Judge Batts as to the validity of the charge, but rather identified the crime that the jury was to consider. Raposo was not charged with murder, but with arson of property used in interstate commerce with death resulting. *See* Dkt. 1.

Raposo also cites Judge Batts's statement at sentencing that she did not agree that the evidence conclusively established that Raposo's motive was to kill Ruiz and Delvalle. Motion at 11; *see* Sentencing Tr. at 8:18-21. This statement, made by Judge Batts in the context of deciding *not to depart downwardly*, reflected her evaluation of the evidence at the trial over which she presided. But Judge Batts then immediately explained the extremely serious nature of the offense, including "the degree of risk inherent in" arson, in explaining her decision not to depart downwardly on that basis: "Arson always includes the inherent risk that life will be lost. When

the life lost is the life of a firefighter in the line of duty -- and several fires were set, including near the obvious way of egress from the burning building -- the Court declines to exercise that discretion to depart downwardly . . . ."  Sentencing Tr. at 8:24-9:6.

Raposo further argues that the Government's decision to not seek a recommendation of life imprisonment from the jury indicates that "the prosecution was not convince[d]" about his sentence.  Motion at 11.  Raposo provides no explanation of how such an exercise of prosecutorial discretion would compel a sentence reduction.  But regardless, the Government at sentencing forcefully advocated for a lengthy sentence and opposed a downward departure.  Sentencing Tr. at 6:17-7:13; Opposition at 8; *see also* Sentencing Tr. at 7:10-13 ("[I]t was certainly never the position of the government that this was the act of an irrational individual but rather this was the act of someone who intended to cause death to Hector Ruiz and Abraham Delvalle.").

Raposo also points to the Government's characterization of his sentence as "undoubtedly long."  Motion at 12; *see* Dkt. 91 (opposition to the First Motion) at 9.  Without question, a sentence of 524 months' incarceration is an extremely long sentence.  But given Raposo's exceedingly serious offense conduct, and the devastating harm caused (*i.e.*, the death of a firefighter who was battling a fire and trying to save lives), the Government's description of Raposo's sentence as "undoubtedly long" hardly reflects that the sentence was inappropriately long.

### 5.  **Raposo's Rehabilitation**

As discussed, the November 1, 2023 amendments to the Sentencing Guidelines now provide that courts may consider a defendant's rehabilitation "in combination with other circumstances."  U.S.S.G. § 1B1.13(d); *see* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,255 (effective Nov. 1, 2023).  A defendant, however, still cannot rely on rehabilitation alone as a basis to justify a sentence reduction.  28 U.S.C. § 994(t)

("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *accord* U.S.S.G. § 1B1.13(d) (explaining that rehabilitation of the defendant while serving the sentence "is not, by itself, an extraordinary and compelling reason," but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted").

In its January 10, 2023 Order denying Raposo's First Motion, this Court acknowledged that Raposo had "spent significant time and energy bettering himself and the prison community." *Raposo*, 2023 WL 142786, at *7. The Government does not dispute Raposo's near flawless disciplinary record and substantial steps at rehabilitation. Opposition at 8. Raposo's prison disciplinary record and efforts at rehabilitation—which include completing horticulture apprenticeships and growing and donating plants to a local church—are admirable. Dkt. 86-8; Motion at 12. But Raposo cannot rely on rehabilitation alone to justify reduction of his sentence. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). And given the Court's findings that Raposo's other arguments do not constitute extraordinary and compelling reasons, even evidence of complete rehabilitation cannot suffice. *Cf. Raposo*, 2023 WL 142786, at *7 (explaining that rehabilitation alone cannot constitute an extraordinary and compelling reason for a sentence reduction, even where Raposo's twenty-seven-year disciplinary record was "nearly faultless" and he had "spent significant time and energy bettering himself and the prison community and resulting in his receipt of an impressive number of academic and professional commendations").

### 6.  The So-Called "*Holloway* Doctrine"

Finally, Raposo seeks relief under *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014), Motion at 2, an argument which Judge Batts rejected on March 1, 2017, Dkt. 71, after Raposo also sought a "reduction of [his] sentence pursuant to the Holloway Do[c]trine," Dkt. 70

at 1. *Holloway*, a case before a district judge in another District, has no precedential effect on this Court. Nor is it even remotely persuasive authority in this case. There, the court ordered the defendant's resentencing after the Government made the discretionary decision—in circumstances unique to that case—to consent to vacatur of "stacked" charges under 18 U.S.C. § 924(c). *Holloway*, 68 F. Supp. 3d at 314-16; *see id.* at 315 (quoting the Assistant United States Attorney: "I want to be clear on this point—that the United States Attorney's position in this case shouldn't be interpreted as reflecting a broader view of Section 924(c) generally or its application to other cases."). Raposo's sentence did not result from "stacked" charges, and the Government has not sought the vacatur of his offense of conviction. *Holloway* thus is of no moment here.

* * *

Accordingly, Raposo has failed to establish "extraordinary and compelling reasons" to warrant his early release.

**B.      Section 3553(a) Sentencing Considerations**

Even had Raposo established "extraordinary and compelling reasons" that merit an early release, the analysis would not end there. The Court would then need to consider whether a sentence reduction is warranted "after considering the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Bennett*, No. 95 Cr. 95 (JPC), 2022 WL 3445349, at *2, 4 (S.D.N.Y. Aug. 17, 2022). Here, the "nature and circumstances" of Raposo's offense, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense," *id.* § 3553(a)(2)(A), and "to afford adequate deterrence," *id.* § 3553(a)(2)(B), lead to the conclusion that reducing Raposo's sentence would not be appropriate.

As discussed throughout this Opinion, Raposo's offense was exceedingly serious and dangerous, resulted in the loss of an innocent person's life, and demanded a very significant term of imprisonment. Not only did Raposo set separate fires on multiple floors of 79-81 Worth Street, including the largest fire in the building's hard-to-access subcellar, but he also took specific actions to maximize the danger by pouring oil on points of egress including the fire escapes, tampering with the building's fire alarm, and locking the building's front door with a mortise lock to which he had the only key. PSR ¶¶ 11-13. As Judge Batts observed, "[o]nce a fire is started and the forces of nature are invoked, no person can know what the final toll of destruction or death will be." Sentencing Tr. at 18:7-9. Indeed, as discussed, Judge Batts declined to downwardly depart even without finding that Raposo's motive was to kill Ruiz and Delvalle because of "the degree of risk inherent in the conduct and the nature of the underlying offense conduct." *Id.* at 8:24-25; *accord id.* at 9:1-2 ("Arson always includes the inherent risk that life will be lost."). The largely uncontrollable danger and potentially fatal consequences inherent to arson demand significant punishment, as well as effective deterrence of would-be arsonists.

And of course here, Raposo's conduct not only was potentially fatal, it was. Lieutenant Lener—a firefighter of fifteen years, a husband, and a father of three young children—lost his life as a result of fighting the fire that Raposo ignited. PSR ¶¶ 16, 20-21. While Lieutenant Lener and other FDNY firefighters were battling the fire and saving those in the building, he lost consciousness in a foot of water. *Id.* ¶ 15. Lieutenant Lener was rushed to a hospital where he would never regain consciousness and would succumb to carbon monoxide poisoning. *Id.* ¶ 16. Judge Batts properly determined that Raposo's sentence needed to hold him accountable for Lieutenant Lener's death. Sentencing Tr. at 18:14-17.

19

In imposing sentence, Judge Batts also took into account Raposo's history and characteristics, describing him as "a troubled individual who ha[d] not learned socially acceptable means of coping with stresses, failure, and difficulties in life," and someone whose "mental capacity and emotional development" may have "contribute[d] to that maladjustment." *Id.* at 18:18-22. As such, Judge Batts deliberately structured the sentence to allow for the possibility of Raposo's rehabilitation by entailing a period of incarceration that would be expected to allow for "good time [Raposo] may be able to earn and be credited with while serving his sentence." *Id.* at 19:4-6. Indeed, Raposo's projected release date of June 13, 2033 may allow him to complete his custodial term at the age of 61.

Raposo's Section 3553(a)-based arguments do not change this analysis. He argues that, in denying his First Motion, the Court evaluated the section 3553(a) factors based on "misleading and even wrong information," Motion at 2-3, citing various areas of disagreement with the PSR which, according to Raposo, "invalidated" the Court's prior decision, *id.* at 13-14. Raposo contends that the Court was wrong to recite in the January 10, 2023 Order that he set fire outside the building, arguing that "no[]where is it written that Mr. Raposo started a fire out[]side the building of 79 Worth Street." Motion at 13. However, according to the PSR, Raposo "set the fire in a pile of garbage just in front of the front door." PSR ¶ 13. Raposo also argues that the Court wrongfully described him as starting "additional fires on the second floor." Motion at 13. But according to the PSR:

> Once he knew Ruiz and Delvalle were back in the building, **RAPOSO** set the first fire, located in the rear of the subcellar of the building. He then went upstairs to the fourth floor to gather his belongings and set more fires. On the fourth floor, **RAPOSO** set the fire to the pipe-threading machine used by Ruiz. **RAPOSO** went to the second floor where he set the fire there and the two fires in the lobby. In the lobby, he set fire to a bag of clothes belonging to Ruiz.

PSR ¶ 12.  Raposo also argues that this Court wrongfully relied on the PSR's "misleading" statement that he "locked the front door[,]" *id.* ¶ 13, because trial testimony showed that the lock could be opened from the inside.  Motion at 14.  But even if the lock could have been opened from the inside, this act still could have impeded the ability of first responders to enter the building, fight the fire, and rescue anyone inside.  *See supra* n.9.  Moreover, at sentencing, the defense did not object to any of these facts, *see* Sentencing Tr. at 3:1-11, 4:7-6:5, thus allowing Judge Batts to accept these "undisputed portion[s]" of the PSR as findings of fact, Fed. R. Crim. P. 32(i)(3); *see* Sentencing Tr. at 19:13-14.  The time to make objections to the PSR has long passed.

Further, to the extent Raposo relies on the 435-month sentence received by Ferranti to suggest that his 524-month sentence created "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), Ferranti's case is distinguishable for reasons discussed at *supra* III.A.2.  Further, Judge Batts took Ferranti's sentence into account in reasoning that a period of incarceration for Raposo that would effectively ensure a life sentence was not warranted.  *See* Sentencing Tr. at 18:22-19:6.

In sum, as the Court previously held when it denied Raposo's First Motion, granting early release in this case would fail to reflect the seriousness of Raposo's crime of setting a fire that caused the death of Lieutenant Lener, would not justly punish that offense, would fail to promote respect for the law, and would not achieve adequate deterrence for such conduct.  Thus, the applicable Section 3553(a) factors compel the conclusion that a reduction of the imposed sentence is not warranted.

**IV. Conclusion**

For the above reasons, Raposo's motion for compassionate release is denied.  The Clerk of

Court is respectfully directed to close Docket Number 104 and to mail a copy of this Opinion and

Order to:

> Alberto Raposo
> Reg. No. 41564-054
> Danbury FCI
> Federal Correctional Institution
> Route 37
> Danbury, CT 06811

SO ORDERED.

Dated: January 16, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge